USAO#1998R02245/EMS

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 05-494 (AET) |
| | : | |
| v. | : | |
| | : | 18 U.S.C. §§ 371, 1343, and 2 |
| PAUL PICCHIERRI and | : | |
| DAVID PRICE | : | I N D I C T M E N T |

The Grand Jury in and for the District of New Jersey,

sitting at Trenton, charges:

### COUNT ONE

1.  At all times relevant to this Indictment:

a.  The defendant, PAUL PICCHIERRI, was a resident of Toms River, New Jersey, and held himself out as an individual experienced in the field of commercial lending.  At various times, defendant PICCHIERRI conducted business as "Financial District Assets and Funding Corp." and "Wall Street Financial Group Ltd."

b.  Financial District Assets and Funding Corp. ("FDAFC") was a Delaware corporation with an office at 1044 Lacey Road, Forked River, New Jersey.

c.  Wall Street Financial Group Ltd. ("WSFG") was a business entity with an address of 350 Ramapo Valley Road, Oakland, New Jersey.

d.  The defendant, DAVID PRICE, was a resident of Pitman, New Jersey, and was the President of FDAFC.

e.   G.L., an un-indicted co-conspirator, was affiliated with both FDAFC and WSFG, and held himself out as a Managing Director of WSFG.

2.   From at least as early as December 1996, through at least September 2000, in Ocean County, in the District of New Jersey and elsewhere, defendants

PAUL PICCHIERRI and
DAVID PRICE

did knowingly and wilfully conspire and agree with G.L. and with others to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

## MANNER AND MEANS OF CONSPIRACY

3.   The object of the scheme and artifice to defraud was for defendants PICCHIERRI and PRICE to solicit and obtain advance fees from individuals and business entities (the "victims") seeking financing for commercial projects.  Although defendants PICCHIERRI and PRICE collected the advance fees in connection with purported efforts to obtain commercial funding for the victims, defendants PICCHIERRI and PRICE never obtained,

and never made any legitimate efforts to obtain, funding for any of the victims.

4.    It was a part of this scheme and artifice to defraud that FDAFC and WSFG held themselves out to real estate brokers and others in the commercial property industry as having the ability to obtain funding for commercial real estate transactions.

5.    It was a further part of this scheme and artifice to defraud that FDAFC and WSFG would accept referrals of victims who were seeking funding for commercial real estate transactions.

6.    It was a further part of this scheme and artifice to defraud that FDAFC and WSFG would advise these victims that their commercial projects met certain undisclosed criteria for funding, but that a site inspection would be required.  The victims were further advised to wire funds to a bank account controlled by FDAFC or WSFG to cover the cost of this site inspection.

7.    It was a further part of this scheme and artifice to defraud that defendants PICHIERRI and PRICE, or other representatives of FDAFC, would often conduct a site inspection. However, the victims never received funding, no efforts to obtain funding on their behalf were made by FDAFC or WSFG, and the advanced fees were never returned to the victims.

## OVERT ACTS

In furtherance of the conspiracy and in order to effect its objects, the following acts were committed in the District of New Jersey and elsewhere:

A.    The Ramada and Days Inn Properties

8.    In or about late 1997 or January 1998, B.S. contacted FDAFC to discuss funding for two commercial properties: a Ramada in Gulfport, Mississippi; and a Days Inn in San Antonio, Texas.   B.S. advised defendant PICCHIERRI that he was seeking loans in the amount of $3.4 million for the Ramada property and $2.5 million for the Days Inn property.

9.    On or about January 12, 1998, defendant PRICE, on behalf of FDAFC, sent a facsimile transmission to B.S., advising that the Ramada project "meets our criteria for funding," but that a site inspection would be required.   Defendant PRICE advised B.S. to wire transfer $5,000 to an FDAFC account as payment for the site inspection.

10. On or about January 20, 1998, B.S. did wire transfer $5,000 to an FDAFC account.

11. Following this wire transfer, defendant PRICE did travel to Gulfport, Mississippi, to conduct a site inspection of the Ramada property.

- 4 -

12. On or about February 18, 1998, B.S. did wire transfer $5,000 to an FDAFC account as a site inspection payment for the Days Inn property.

13. Following this wire transfer, defendants PICCHIERRI and PRICE did travel to San Antonio, Texas, to conduct a site inspection of the Days Inn property.

14. On or about March 17, 1998, a representative of FDAFC did send a facsimile transmission to B.S. requesting additional documentation regarding the Ramada property.

15. On or about May 28, 1998, B.S. did send a facsimile transmission to defendant PRICE at FDAFC's office in Lacey Township, New Jersey, requesting a refund of the fees paid.

16. B.S. did not receive any funding from FDAFC or any return of the fees paid.

B.   The Dashmor Properties and Barbados Projects

17. In or about January 1998, a Canadian engineering firm (the "Canadian firm") entered into negotiations with FDAFC for financing on two projects:  the refinancing of certain properties that the Canadian firm owned in Canada (the "Dashmor properties"); and constructing housing in Barbados (the "Barbados project").

18. On or about the following dates, the Canadian firm wire transferred funds to an FDAFC account for the following purposes:

| Date | Amount | Reason |
|------|--------|--------|
| 1/7/1998 | $10,000 | Advance fee for Barbados project |
| 1/20/1998 | $10,000 | Advance fee for Dashmor properties |
| 2/4/1998 | $5,000 | Capital for Barbados project |
| 2/27/1998 | $7,500 | Travel expenses for Barbados project |

19. In or about January 1998, a representative of FDAFC traveled to Canada to conduct a site inspection of the Dashmor properties.

20. In or about January 1998, defendant PICCHIERRI and a representative of FDAFC traveled to Barbados to conduct a site inspection of the Barbados project.

21. In or about February 1998, defendants PICCHIERRI and PRICE traveled to Canada to meet with representatives of the Canadian firm.

22. In or about March 1998, defendant PICCHIERRI traveled to Barbados in connection with the Barbados project.

23. FDAFC never provided the Canadian firm any financing for either the Dashmor properties or the Barbados project, and never returned any of the fees.

24. FDAFC did, however, continue negotiations with the government of Barbados to develop the Barbados project using a California construction firm (the "California firm").

25.   On or about October 11, 1998, defendant PICCHIERRI, G.L., a representative of FDAFC, and a representative of the California firm traveled to Barbados to meet with representatives of the government of Barbados regarding the Barbados project.

26.   On or about October 27, 1998, defendant PICCHIERRI, G.L., and a representative of FDAFC traveled to California to meet with the California firm regarding the Barbados project.

27.   FDAFC never provided any funding for the Barbados project.

C.   The Ocean Club Resort

28.   In or about 2000, R.S., on a referral, contacted WSFG to discuss funding for the purchase of The Ocean Club Resort in St. Maarten for $9 million.

29.   In or about May and June 2000, R.S. had telephone conversations with defendant PICCHIERRI and G.L. regarding funding for The Ocean Club Resort.

30.   On or about June 12, 2000, G.L., on behalf of WSFG, faxed R.S. a letter stating that The Ocean Club Resort project "meets our criteria for Hotel/Resort funding," but that a site inspection would be required.  G.L. advised R.S. to wire transfer $12,500 to a WSFG account.

31. On or about June 30, 2000, R.S. did cause $12,500 to be wired from the account of his employer to a WSFG account.

32. On or about September 11, 2000, R.S. did send a facsimile transmission to defendant PICCHIERRI to confirm a purported closing scheduled for September 15, 2000.

33. No closing took place, WSFG never provided funding for The Ocean Club Resort property, and never returned the advanced fee.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH FOUR

1.    Paragraphs 1, 3 through 7, and 21 through 27 of Count One of this Indictment are realleged as if set forth fully herein.

2.    On or about the dates set forth below, for the purposes of executing the above-described scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, in the District of New Jersey, and elsewhere, defendant

PAUL PICCHIERRI

knowingly and willfully transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, signs, and signals, which transmissions are described below:

| Count | Approx. Date | Use of Interstate Wires |
|-------|--------------|-------------------------|
| 2 | 6/30/2000 | Wire transfer of $12,500 from Executive Interim Management (New York) to WSFG (New Jersey) |
| 3 | 6/30/2000 | Facsimile transmission from Executive Interim Management (New York) to WSFG (New Jersey) |
| 4 | 9/11/2000 | Facsimile transmission from R.S. (South Carolina) to defendant PICCHIERRI (New Jersey) |

All in violation of Title 18, United States Code, Sections 1343 and 2.


A TRUE BILL


FOREPERSON


CHRISTOPHER J. CHRISTIE
United States Attorney

Case 3:05-cr-00494-AET   Document 1   Filed 06/23/05   Page 11 of 11 PageID: 11

## United States District Court
## District of New Jersey

**UNITED STATES OF AMERICA**

**v.**

**PAUL PICCHIERRI and DAVID PRICE**

# INDICTMENT FOR
### 18 U.S.C. §§ 371, 1343 and 2

A True Bill,



Foreperson

### CHRISTOPHER J. CHRISTIE
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

ERIC M. SCHWEIKER
*ASSISTANT U.S. ATTORNEY*
*(609) 989-2190*